**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0854n.06
Filed: November 20, 2006

**No. 05-6938**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| Teodoro Toledo | ) | |
| | ) | |
|     Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Alphonso Jackson, Secretary, United States | ) | WESTERN DISTRICT OF KENTUCKY |
| Department of Housing and Urban | ) | |
| Development | ) | |
| | ) | |
|     Defendant-Appellee. | | |

Before: CLAY, ROGERS, Circuit Judges; KATZ, District Court Judge.[*]

**Rogers, Circuit Judge:** Teodoro Toledo's employment discrimination claims against the

United States Department of Housing and Urban Development falter two-thirds of the way through

the three-part *McDonnell Douglas* analysis. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973). Toledo, a Hispanic/Pacific Islander born in 1947, established a *prima facie* case of both age

and national origin discrimination against HUD, which hired Stephen Schneller, a younger

Caucasian American male, as "Supervisory Public Housing Revitalization Specialist" instead of

promoting Toledo to that position. *See Anthony v. BTR Automotive Sealing Sys. Inc.*, 339 F.3d 506,

515 (6th Cir. 2003); *Grosjean v. First Energy Corp.*, 349 F.3d 332, 338-40 (6th Cir. 2003). HUD

---

[*]The Honorable David A. Katz, United States District Judge for the Northern District of
Ohio, sitting by designation.

then articulated a legitimate, non-discriminatory reason for its decision to hire Schneller, namely that

Schneller interviewed better and had better academic credentials than Toledo. *See Cox v. Ky. Dep't*

*of Trans.*, 53 F.3d 146, 150 (6th Cir. 1995). Because Toledo offered no evidence to suggest that

HUD's proffered reason was pretextual, his discrimination claims fail to satisfy the third *McDonnell*

*Douglas* element. For this reason, we AFFIRM the district court's decision to grant HUD's motion

for summary judgment and dismiss Toledo's claims.[1]

Toledo, a Hispanic native of the Phillippines, was approximately 56 years old when he

applied for a position as a Supervisory Public Housing Revitalization Specialist with HUD in

Louisville. The job posting required candidates to have "[k]nowledge and/or experience in public

housing, Section 8 programs, or related community development or local housing programs."[2]

---

[1]This court reviews the district court decision to grant summary judgment *de novo*. *Rowley v. United States*, 76 F.3d 796, 799 (6th Cir. 1999). Summary judgment is appropriate if "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).

[2]The posting read:

**KNOWLEDGES** [sic]**, SKILLS AND ABILITIES REQUIRED**

Quality Ranking Factors: Applicants MUST provide separate narrative statements describing how their experience satisfies each Quality Ranking Factor (QRF)/Knowledge, Skill and Ability (KSA). Provide specific examples of your qualifications and significant accomplishments.

1. Ability to direct and manage a staff (Critical Factor)

2. Ability to establish objectives and performance goals, monitor progress toward their achievement and set priorities based on changing requirements.

An offsite, three-person panel reviewed the applications that Toledo, Stephen Schneller, and other applicants submitted and concluded that Toledo, Schneller, and a small group of applicants satisfied the minimum qualifications for the position. At that point, Art Wasson, the Director of the Office of Public Housing, and Don Clem independently reviewed the applications and interviewed candidates. Wasson and Clem agreed to hire Schneller, who exhibited positive qualities and interviewed better than Toledo.

On February 20, 2004, Toledo alleged in a four-page complaint that HUD violated the Age Discrimination in Employment Act, 29 U.S.C. § 633(a), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., when it hired "an individual less qualified than [Toledo] and not of the same protected class as [Toledo] based on age and national origin." On July 1, 2005, HUD moved for summary judgment, which the U.S. District Court for the Western District of Kentucky granted on November 14, 2005. For his ADEA and Title VII claims to survive summary judgment, Toledo must show that there exists a material issue of fact as to whether (1) HUD's proffered reason had no basis in fact, (2) the proffered reason did not actually motivate HUD, or (3) the proffered reason was insufficient to motivate the decision to hire Schneller over Toledo. *See BTR Automotive*

3. Ability to communicate effectively and perform representational functions both orally and in writing with HUD clients, local government officials, citizen groups and/or the public on programmatic and technical issues.

4. Knowledge and/or experience in public housing, Section 8 programs, or related community development or local housing programs.

(JA 76-77.)

*Sealing Sys., Inc.,* 339 F.3d at 516.

Because Toledo concedes that he has no direct evidence of discriminatory intent, he instead argues, first, that the language of the vacancy announcement demonstrates that Schneller was not qualified, and, second, that Schneller did not, in fact, interview better than Toledo and did not have as good of an academic background as Toledo.

The terms of the vacancy announcement do not support Toledo's claim. Toledo cites the posting's requirement that applicants have "[k]nowledge and/or experience in public housing, Section 8 programs, or related community development or local housing programs" and argues that Schneller lacked knowledge of or experience in "public housing" and "Section 8 programs."[3] Toledo's reading of the vacancy announcement is flawed, as he implicitly recognized during his deposition. Public housing and Section 8 experience is not a necessary pre-requisite for the job since a qualified applicant can have knowledge or experience in "related community development or local housing programs" instead. Indeed, Schneller had such skills. At the time of his application for the position, Schneller was an Operations Specialist-Community Builder for HUD. From 1996 to June 2000, he was the Housing Development Manager for Volunteers of America of Kentucky and Tennessee, Inc., and from June 1993 to October 1996, he served as the Executive Director of Community Health Trust, Inc. For this reason, there is no material issue of disputed fact whether

---

[3]An undated "Memorandum for Record" from Loretta L. Bonds, "Contract Investigator, JDG Associates, Inc." notes that Bonds could not "get an answer [from HUD] as to how the selectee was rated qualified as he had no experience in the major duties as listed in the vacancy announcement." (JA 120.) Contrary to Toledo's description, Bonds merely purports to ask HUD about Schneller's qualifications; she does not make any conclusions about them.

HUD's proffered decision was pretextual.

Also unavailing is Toledo's second argument that he interviewed as well as Schneller and that his academic background is stronger. It may very well be that Toledo is more qualified than Schneller and that HUD incorrectly thought otherwise. Such a fact, however, is irrelevant. The ADEA and Title VII prohibit employers from discriminating against applicants on the basis of protected characteristics; these laws do not require employers to hire the best applicants. *See Stein v. Nat'l City Bank*, 942 F.2d 1062, 1065 (6th Cir. 1991); *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987). Toledo's presentation of his own qualifications and his mere conclusory allegations as to pretext are insufficient to withstand a motion for summary judgment. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990); *BTR Automotive Sealing Sys., Inc.,* 339 F.3d at 516; *Brownlow v. Edgecomb Metals Co.*, 867 F.2d 960, 964 (6th Cir. 1989).[4]

For the foregoing reasons, the district court judgment is AFFIRMED.

---

[4]Toledo failed to present any evidence that his interviewing skills and academic credentials were so far superior to those of Schneller that the disparity in abilities alone could warrant a jury finding that HUD's reasons for hiring Schneller were pretext.